**UNITED STATES DISTRICT COURT**

**DISTRICT OF NEVADA**

| | | |
|---|---|---|
| LAS VEGAS METROPOLITAN POLICE DEPARTMENT HEALTH AND WELFARE TRUST,<br><br>Plaintiff,<br><br>vs.<br><br>P&P INSURANCE SERVICES, LLC et al.,<br><br>Defendants. | ) | 2:11-cv-00734-RCJ-PAL<br><br>**ORDER** |

This case arises out of an alleged kickback scheme in violation of a consulting agreement. Pending before the Court is a motion to dismiss the Complaint, a motion to dismiss the Cross-claim, and a motion to dismiss the Third-party Complaint. For the reasons given herein, the Court denies the motions.

**I. FACTS AND PROCEDURAL HISTORY**

On or about January 1, 2002, the Las Vegas Metropolitan Police Department Health & Welfare Trust (the "Trust") entered into a Consulting Services Agreement (the "P&P Agreement") with P&P Insurance Services, LLC ("P&P"), under which P&P was to provide healthcare consulting services to the Trust at the rate of $2 per employee per month, and subject to a provision that P&P and its agents could not receive anything of value from any other current or contemplated service provider of the Trust as consideration for the Trust doing business with

the other provider or for P&P recommending the other provider to the Trust. (*See* Compl. ¶¶ 13–16, May 9, 2011, ECF No. 1 (quoting P&P Agreement ¶ 5(c)). The Trust also entered into a contract with Tru Services, LLC (the "Tru Services Contract") to provide stop loss coverage for the Trust and its employees from 2002–2010. (*Id.* ¶ 18). The Trust alleges that Tru Services was aware of the P&P Agreement, as P&P and one of its principals, Tom Pomeroy, brokered the Tru Services Agreement. (*See id.* ¶¶ 3, 17–19).

Since 2002, Tru Services has been paying between $1.55 and $3.56 per employee per month to an entity called GIS, LLC—an entity which is not registered with either Nevada's or Arizona's secretaries of state, the only available contact information for which is a post office box in Phoenix, Arizona, and which the Trust believes is a fictional entity used by P&P and Pomeroy for the sole and express purpose of defrauding the Trust, as explained herein. (*See id.* ¶¶ 20, 28–30). Specifically, Tru Services charged the Trust more for stop loss insurance under the Tru Services Contract in order to provide for the transfers it made to GIS, with overcharges totaling $1,072,372.52 from 2002 through 2009. (*See id.* ¶¶ 22–23). Pomeroy and P&P received some portion of the transfers from Tru Services to GIS, which violated ¶ 5(c) of the P&P Agreement because it was consideration to P&P (or its agents) for brokering the Trust's contract with Tru Services. (*Id.* ¶ 24). When the Trust began to inquire of P&P's competitors in 2010, P&P or Pomeroy forged a renewal to the P&P Agreement to frustrate the ability of the Trust to obtain a new stop loss insurer, in furtherance of the scheme. (*See id.* ¶¶ 25–26). Defendants have also intentionally concealed their true identities and relationships. (*Id.* ¶ 27).

The Trust sued P&P, Pomeroy, Tru Services, GIS, and two alleged principals of GIS, Michael Johnson and Peter Ranke, in this Court on six causes of action: breach of contract and the implied covenant of good faith and fair dealing (P&P and Pomeroy); and fraud, civil conspiracy, racketeering under Nevada law, and unjust enrichment (all Defendants). In its Answer, Tru Services brought a Cross-claim for equitable indemnity against P&P, Pomeroy, and

GIS, and a Third-party Complaint ("TPC") for equitable indemnity against an Arizona limited liability company called Governmental Insurance Services, LLC.[1]

Tru Services distinguishes Governmental Insurance Services from GIS, which it characterizes as "a[n unlicensed] limited liability company in Arizona doing business in Clark County, Nevada." (*See* Answer, Cross-cl., & Third-party Compl. 9:18, July 27, 2011, ECF No. 20). Tru Services also alleges that Pomeroy is not only a principal of P&P, but also a principal of both GIS and Governmental Insurance Services. (*See id.* 9:22–24). Tru Services refers to a letter it received from Pomeroy on or about March 7, 2007—approximately a month after Governmental Insurance Services's incorporation in Arizona—indicating that Tru Services should pay all of Pomeroy's commissions to his new company, Governmental Insurance Services. (*See id.* 12:1–3). Tru Services confirms that P&P and Pomeroy brokered the Tru Services Contract between itself and the Trust and signed annual renewals as broker through 2010. (*See id.* 10:8–11:9). Tru Services notes that the Trust's application for its stop loss policy, i.e., the Tru Services Contract, explicitly disclosed that Pomeroy was to receive a 15% commission for brokering the policy, and that each annual renewal thereof through 2010 included the same disclosure, (*see id.* 11:10–12:30), implying that the Trust waived the restriction in the P&P Agreement by assenting to this provision of the Tru Services Agreement. In any case, Tru Services denies any knowledge of the P&P Agreement and alleges it relied on the representations of Pomeroy, the Trust's broker. (*See id.* 12:14–18).

P&P and Pomeroy have moved to dismiss the Complaint for lack of personal jurisdiction, and they have also moved to dismiss the Cross-claim for both lack of personal jurisdiction and

---

[1]GIS, LLC is not listed with either the Nevada Secretary of State or the Arizona Corporation Commission, but Governmental Insurance Services, L.L.C. is listed as a domestic LLC in good standing with the Arizona Corporation Commission, having as a sole manager and member a Ms. Rachel Prystie who resides in Arizona. The company was incorporated on February 12, 2007.

failure to state a claim. Governmental Insurance Services has moved to dismiss the TPC for both lack of personal jurisdiction and failure to state a claim.

**II. LEGAL STANDARDS**

**A. Personal Jurisdiction**

A defendant may move to dismiss for lack of personal jurisdiction. *See* Fed. R. Civ. P. 12(b)(2). Jurisdiction exists if: (1) provided for by law; and (2) the exercise of jurisdiction comports with due process. *See Greenspun v. Del E. Webb Corp.*, 634 F.2d 1204, 1207 (9th Cir. 1980). When no federal statute governs personal jurisdiction, a federal court applies the law of the forum state. *See Boschetto v. Hansing*, 539 F.3d 1011, 1015 (9th Cir. 2008). Where a forum state's long-arm statute provides its courts jurisdiction to the fullest extent of the Due Process Clause of the Fourteenth Amendment, such as Nevada's does, *see Arbella Mut. Ins. Co. v. Eighth Judicial Dist. Court*, 134 P.3d 710, 712 (Nev. 2006) (citing Nev. Rev. Stat. § 14.065), a court need only apply federal due process standards, *see Boschetto*, 539 F.3d at 1015.[2]

There are two categories of personal jurisdiction: general jurisdiction and specific jurisdiction. General jurisdiction exists over a defendant who has "substantial" or "continuous

---

[2]Nevada's long-arm rule restricts extra-territorial jurisdiction to the limits of both the U.S. and Nevada Constitutions. *See* Nev. Rev. Stat. § 14.065(1). Nevada's Due Process Clause is textually identical to the federal clause in relevant respects, *see* Nev. Const. art. 1, § 8(5), and the Nevada Supreme Court reads the state clause as coextensive with the federal clause, *see, e.g.*, *Wyman v. State*, 217 P.3d 572, 578 (Nev. 2009). Until 1868, when the Fourteenth Amendment was adopted, the Due Process Clause of the Fifth Amendment did not apply to the states. *See Barron v. City of Baltimore*, 32 U.S. 243, 250–51 (1833). The Declaration of Rights that comprises Article I of the Nevada Constitution was included in order to impose certain restrictions on the State of Nevada that were already imposed against the federal government under the Bill of Rights, and the Nevada Supreme Court has not interpreted the protections of the Declaration of Rights to exceed the scope of their federal counterparts. Michael W. Bowers, *The Sagebrush State* 43–44 (3rd ed., Univ. Nev. Press 2006); Michael W. Bowers, *The Nevada State Constitution* 24 (1993). During the Nevada Constitutional Convention in 1864, the Due Process Clause of Article I was not debated, although several other provisions of Article I, and even Section 8, were heavily debated. *See generally* Andrew J. Marsh, Official Report of the Debates and Proceedings of the Constitutional Convention of the State of Nevada (Frank Eastman pr., 1866), *available at* http://books.google.com.

and systematic" contacts with the forum state such that the assertion of personal jurisdiction over him is constitutionally fair even where the claims are unrelated to those contacts. *See Tuazon v. R.J. Reynolds Tobacco Co.*, 433 F.3d 1163, 1171 (9th Cir. 2006) (citing *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 415 (1984)).

Even where there is no general jurisdiction over a defendant, specific jurisdiction exists when there are sufficient minimal contacts with the forum state such that the assertion of personal jurisdiction "does not offend 'traditional notions of fair play and substantial justice.'" *Int'l Shoe Co. v. State of Wash., Office of Unemployment Comp. & Placement*, 326 U.S. 310, 316 (1945) (quoting *Milliken*, 311 U.S. at 463). The standard has been restated using different verbiage. *See Hanson v. Denckla*, 357 U.S. 235, 253 (1958) ("[I]t is essential in each case that there be some act by which the defendant purposefully avails itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws." (citing *Int'l Shoe Co.*, 326 U.S. at 319)); *World-wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 297 (1980) ("[T]he foreseeability that is critical to due process analysis is not the mere likelihood that a product will find its way into the forum State. Rather, it is that the defendant's conduct and connection with the forum State are such that he should reasonably anticipate being haled into court there." (citing *Kulko v. Superior Court of Cal.*, 436 U.S. 84, 97–98 (1978))). From these cases and others, the Ninth Circuit has developed a three-part test for specific jurisdiction:

> (1) The non-resident defendant must purposefully direct his activities or consummate some transaction with the forum or resident thereof; or perform some act by which he purposefully avails himself of the privilege of conducting activities in the forum, thereby invoking the benefits and protections of its laws;
>
> (2) the claim must be one which arises out of or relates to the defendant's forum-related activities; and
>
> (3) the exercise of jurisdiction must comport with fair play and substantial justice, i.e. it must be reasonable.

*Boschetto*, 539 F.3d at 1016 (quoting *Schwarzenegger v. Fred Martin Motor Co.*, 374 F.3d 797,

802 (9th Cir. 2004)).

> The plaintiff bears the burden on the first two prongs. If the plaintiff establishes both prongs one and two, the defendant must come forward with a "compelling case" that the exercise of jurisdiction would not be reasonable. But if the plaintiff fails at the first step, the jurisdictional inquiry ends and the case must be dismissed.

*Id.* (citations omitted). The "purposeful direction" option of the first prong uses the "*Calder*-effects" test, under which "the defendant allegedly must have (1) committed an intentional act, (2) expressly aimed at the forum state, (3) causing harm that the defendant knows is likely to be suffered in the forum state." *Brayton Purcell LLP v. Recordon & Recordon*, 606 F.3d 1124, 1128 (9th Cir. 2010) (quoting *Yahoo! Inc. v. La Ligue Contre Le Racisme Et L'Antisemitisme*, 433 F.3d 1199, 1206 (9th Cir.2006) (en banc)). The third prong of the specific jurisdiction test is itself a seven-factor balancing test, under which a court considers:

> (1) the extent of the defendant's purposeful interjection into the forum state's affairs; (2) the burden on the defendant of defending in the forum; (3) the extent of conflict with the sovereignty of the defendants' state; (4) the forum state's interest in adjudicating the dispute; (5) the most efficient judicial resolution of the controversy; (6) the importance of the forum to the plaintiff's interest in convenient and effective relief; and (7) the existence of an alternative forum.

*Menken v. Emm*, 503 F.3d 1050, 1060 (9th Cir. 2007) (quoting *CE Distrib., LLC v. New Sensor Corp.*, 380 F.3d 107, 1112 (9th Cir. 2004)).

**B. Failure to State a Claim**

Federal Rule of Civil Procedure 8(a)(2) requires only "a short and plain statement of the claim showing that the pleader is entitled to relief" in order to "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Conley v. Gibson*, 355 U.S. 41, 47 (1957). Federal Rule of Civil Procedure 12(b)(6) mandates that a court dismiss a cause of action that fails to state a claim upon which relief can be granted. A motion to dismiss under Rule 12(b)(6) tests the complaint's sufficiency. *See N. Star Int'l v. Ariz. Corp. Comm'n*, 720 F.2d 578, 581 (9th Cir. 1983). When considering a motion to dismiss under Rule 12(b)(6) for failure to state a claim, dismissal is appropriate only when the complaint does not give the

defendant fair notice of a legally cognizable claim and the grounds on which it rests. *See Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). In considering whether the complaint is sufficient to state a claim, the court will take all material allegations as true and construe them in the light most favorable to the plaintiff. *See NL Indus., Inc. v. Kaplan*, 792 F.2d 896, 898 (9th Cir. 1986). The court, however, is not required to accept as true allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences. *See Sprewell v. Golden State Warriors*, 266 F.3d 979, 988 (9th Cir. 2001). A formulaic recitation of a cause of action with conclusory allegations is not sufficient; a plaintiff must plead facts showing that a violation is plausible, not just possible. *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009) (citing *Twombly*, 550 U.S. at 555).

"Generally, a district court may not consider any material beyond the pleadings in ruling on a Rule 12(b)(6) motion. However, material which is properly submitted as part of the complaint may be considered on a motion to dismiss." *Hal Roach Studios, Inc. v. Richard Feiner & Co.*, 896 F.2d 1542, 1555 n.19 (9th Cir. 1990) (citation omitted). Similarly, "documents whose contents are alleged in a complaint and whose authenticity no party questions, but which are not physically attached to the pleading, may be considered in ruling on a Rule 12(b)(6) motion to dismiss" without converting the motion to dismiss into a motion for summary judgment. *Branch v. Tunnell*, 14 F.3d 449, 454 (9th Cir. 1994). Moreover, under Federal Rule of Evidence 201, a court may take judicial notice of "matters of public record." *Mack v. S. Bay Beer Distribs., Inc.*, 798 F.2d 1279, 1282 (9th Cir. 1986). Otherwise, if the district court considers materials outside of the pleadings, the motion to dismiss is converted into a motion for summary judgment. *See Arpin v. Santa Clara Valley Transp. Agency*, 261 F.3d 912, 925 (9th Cir. 2001).

///

///

**III. ANALYSIS**

**A. Personal Jurisdiction**

"Where, as here, the defendant's motion is based on written materials rather than an evidentiary hearing, the plaintiff need only make a prima facie showing of jurisdictional facts to withstand the motion to dismiss. The plaintiff cannot 'simply rest on the bare allegations of its complaint,' but uncontroverted allegations in the complaint must be taken as true. '[W]e may not assume the truth of allegations in a pleading which are contradicted by affidavit,' but we resolve factual disputes in the plaintiff's favor." *Mavrix Photo, Inc. v. Brand Techs., Inc.*, 647 F.3d 1218, 1223 (9th Cir. 2011) (citations omitted).

**1. Personal Jurisdiction over P&P and Pomeroy in Nevada**

The Trust alleges that P&P is an Arizona limited liability company and that Pomeroy is an Arizona resident, and that they both "do[] business in Clark County, Nevada." (*See* Compl. ¶¶ 2–3). If P&P and Pomeroy have not contradicted the allegation that they do business in Nevada by affidavit or other admissible evidence, the allegation is sufficient to withstand a motion to dismiss for lack of personal jurisdiction. First, P&P and Pomeroy's motion is not verified, so the claims made therein are not themselves evidence. Second, the exhibits attached to the motion are: (1) the P&P Agreement; (2) the Summons (served on Pomeroy) and Complaint; and (3) Pomeroy's affidavit. If Pomeroy's affidavit indicates that there is no personal jurisdiction over P&P or Pomeroy in Nevada, then Plaintiff must respond with contrary evidence to avoid dismissal, because the Complaint itself is not verified, and hence does not itself constitute contrary evidence.

Pomeroy attests that he is an Arizona resident who has visited Nevada several times on vacation, but that he has never resided in Nevada and has no bank accounts, investments, or real property in Nevada. (*See* Pomeroy Aff. ¶¶ 2–3, July 15, 2011, ECF No. 19-3). He admits having previously owned real property in Las Vegas, Nevada from 1996 to 2007, but attests that he

rented the property to his daughter and never resided there himself, and that he quitclaimed it to his daughter in 2007. (*See id.* ¶ 3). He attests that he is and has been the manager of P&P, an Arizona limited liability company with no offices, property, accounts, or investments in Nevada. (*See id.* ¶ 5). He admits that he and P&P have had clients in Nevada, but he attests that they have never solicited clients from Nevada or advertised in Nevada. (*See id.* ¶ 6). His first contact with the Trust was in 2001 when the Trust's predecessor-in-interest contacted him in Arizona. (*Id.* ¶ 7). Pomeroy signed the P&P Agreement in Arizona and provided all services thereunder from Arizona. (*Id.* ¶¶ 9–10). He periodically communicated from Arizona to Nevada telephonically and electronically, and he periodically visited the Trust in Las Vegas, Nevada to advise the Trust. (*Id.* ¶ 10). Pomeroy is registered as a non-resident insurance agent pursuant to Nevada Revised Statutes Chapter 683A. (*Id.* ¶ 15). Finally, Pomeroy attests that he is "in the advanced stages of a rare and serious illness" and that his health problems would make a defense in Nevada burdensome on himself and his business, P&P. (*See id.* ¶¶ 13–14).

The Court will deny the motions to dismiss the Complaint and the Cross-claim based on lack of personal jurisdiction over P&P and Pomeroy in Nevada. Pomeroy admits that he is a registered insurance agent in Nevada and that he has several clients in Nevada for that purpose. Registering as an insurance agent under Chapter 683A is an affirmative act directed towards Nevada for the purpose of securing the ability to do business in the state legally. Even if the number of P&P's clients in Nevada are few, Pomeroy seems to admit that he has had several clients in Nevada over the years, including the Trust, pursuant to his registration as a non-resident insurance agent, and this is sufficient to show the systematic and continuous contact with the state necessary to assert general jurisdiction. Even if there were not enough for general jurisdiction, there is enough for specific jurisdiction in this case. Pomeroy admits that the contract was performed at least partially in Nevada via his in-person consulting in Las Vegas, and that he could not have performed the contract at all had he not taken the step of registering

as an insurance agent in Nevada in order to avail himself of the right to do business in the state. The alleged harm arose out of these contacts.

Finally, the exercise of jurisdiction is reasonable. Pomeroy's purposeful interjection into the state was not great, but it was commensurate with the alleged harm caused in the state. The burden of defending in Nevada arises out of Pomeroy's illness. Pomeroy's own presence will only be necessary if a trial is required, and the Court may permit a video-taped deposition in lieu of live testimony, if absolutely necessary. In any case, Las Vegas is barely thirty minutes from Phoenix by air, which makes travel from one's home in Phoenix to the Las Vegas courthouse easier than travel from many parts of Arizona itself to either the Phoenix or Tucson courthouses. There is no conflict with the sovereignty of the State of Arizona. Nevada has a greater interest in adjudicating the dispute than does Arizona, because of the alleged wrongdoing by a Nevada-licensed insurance agent. Resolution of the controversy in federal court will be more efficient in Nevada than in Arizona because of the current judicial emergency in the District of Arizona. Plaintiff's interest in convenient and effective relief favors the Las Vegas forum. There is an alternative forum in Arizona, though it is not as efficient because of the judicial emergency in that district. The Court will therefore deny the motions to dismiss the Complaint and the Cross-claim on the basis of personal jurisdiction.

**2. Personal Jurisdiction over Governmental Insurance Services in Nevada**

Tru Service's TPC is not verified. Tru Service alleges that Governmental Insurance Services is an Arizona limited liability company doing business in Clark County, Nevada. (*See* Answer, Cross-cl., & Third-party Compl. 19–21). First, Governmental Insurance Services's motion is not verified, so the claims made therein are not themselves evidence. Second, the only exhibit attached to the motion is the affidavit of Ms. Rachel Prystie, the person listed as the sole manager and member of Governmental Insurance Services, L.L.C. on the Arizona Corporation Commission's website. Prystie attests that she is the managing member of Governmental

Insurance Services, which she also refers to as "GIS," making it possible that there is no separate entity called GIS, but that the two are the same entity. (*See* Prystie Aff. ¶ 2, Aug. 22, 2011, ECF No. 34-1). She attests that Governmental Insurance Services is an Arizona limited liability company with no offices, staff, property, accounts, or investments in Nevada. (*See id.* ¶ 3). She also attests that Governmental Insurance Services does no advertising in Nevada, and, more importantly, does no business in Nevada, has no clients in Nevada, and has had no contacts with the Trust. (*See id.* ¶¶ 3, 6).

Tru Services refers to the letter it received from Pomeroy on or about March 7, 2007—approximately a month after Governmental Insurance Services's incorporation in Arizona—indicating that Tru Services should pay all Pomeroy's commissions to "my new limited liability company, 'Governmental Insurance Services, L.L.C.'" (*See* Letter, Mar. 7, 2007, ECF No. 20-1, at 32). Tru Services also notes that the Renewal Confirmation Worksheet ("RCW") Pomeroy signed in 2007 as broker to renew the Tru Services Contract between the Trust and Tru Services for calendar year 2008 indicated that his 15% brokerage commission was payable to "Thomas R. Pomeroy Government Insurance Services," that the RCW he signed in 2008 to renew the Tru Services Contract for calendar year 2009 indicated that his 15% commission was payable simply to "Governmental Insurance Services, " and that the RCW he signed in 2009 to renew the Tru Services Contract for calendar year 2010 indicated that his 15% commission was payable to "Thomas R. Pomeroy." (*See* 2008 RCW, Dec. 6, 2007, ECF No. 20-1, at 20; 2009 RCW, Dec. 4, 2008, ECF No. 20-1, at 22; 2010 RCW, Dec. 30, 2009, ECF No. 20-1, at 24). Tru Services argues that this evidence shows Governmental Insurance Services was simply an alter ego of Pomeroy, or at least that it had enough of a connection to the insurance contract with the Trust to be amenable to personal jurisdiction in Nevada.

On its face, Governmental Insurance Services may appear to be a separate corporate entity from P&P that has done no direct business in Nevada but has merely received some of

Pomeroy's brokerage commissions from Tru Services under the Tru Services Contract between Tru Services and the Trust. But even if Governmental Insurance Services was not technically an alter ego of Pomeroy, which it may have been, it seems clear that Plaintiff alleges Governmental Insurance Services was created, or at least used, for the purpose of defrauding the Trust, which is enough for specific jurisdiction over the fraud-related claims even if not an alter ego. To establish that one party is the alter ego of another in Nevada, a plaintiff must establish by a preponderance of the evidence that: (1) the corporation is influenced and governed by the person asserted to be its alter ego; (2) there is a unity of interest and ownership such that one is inseparable from the other; and (3) the facts are such that adherence to the fiction of separate entity would, under the circumstances, sanction a fraud or promote injustice. *See Truck Ins. Exch. v. Palmer J. Swanson, Inc.*, 189 P.3d 656, 660 (Nev. 2008). The evidence connecting Pomeroy to Governmental Information Services consists of Pomeroy's own written statement that Governmental Information Services was "[his] new company" and direction on the 2008 and 2009 renewal applications that the brokerage fees should be paid to "Thomas R. Pomeroy Government Insurance Services" and "Government Insurance Services," respectively. This is enough to show at the motion to dismiss stage that Pomeroy was using Government Insurance Services as an alter ego and that it would be unjust to treat it as a separate entity at all, much less an entity with no connection to the alleged fraud targeting the Nevada-based Trust. Although Ms. Prystie attests to be the managing member, she also attests that "[b]eginning in 2007, Tom Pomeroy brokered insurance through GIS," indicating that when Pomeroy acted as broker for the 2008, 2009, and 2010 renewals of the Tru Services Contract between Tru Services and the Trust, he was acting not as P&P's agent, but as Governmental Insurance Service's agent, which would in fact provide for specific jurisdiction over Governmental Insurance Service in Nevada from 2008 forward, without even invoking the alter ego doctrine. In any case, factual disputes must be resolved in favor of the person asserting personal jurisdiction at the motion to dismiss stage.

*Mavrix Photo, Inc.*, 647 F.3d at 1223. The Court therefore denies the motion to dismiss the TPC based on lack of personal jurisdiction over Governmental Information Services.

**B. Failure to State an Equitable Indemnity Claim Against P&P, Pomeroy, or Governmental Insurance Services**

P&P and Pomeroy move to dismiss Tru Service's Cross-claim for failure to state an equitable indemnity claim, and Governmental Information Services has moved to dismiss Tru Service's TPC for failing to state the same claim. Essentially, P&P, Pomeroy, and Governmental Information Services argue that a claim for equitable indemnity is unripe because such a claim does not accrue in Nevada until an actual payment is made by the putative indemnitee. Although a cause of action for indemnity does not accrue in Nevada until the party seeking indemnity has discharged a legal obligation through settlement or judgment, *Rodriguez v. Primadonna Co., LLC*, 216 P.3d 793, 801 (Nev. 2009) (citing *The Doctors Co. v. Vincent*, 98 P.3d 681, 686 (Nev. 2004)), a federal court may entertain such a claim even before it accrues so long as: (1) any resulting judgment is made contingent on a putative indemnitee's payment to Plaintiff, or (2) the Court stays any judgment until a putative indemnitee shows that it has paid Plaintiff, because Rule 14 permits such claims where the target "is or may be liable," *see Andrulonis v. United States*, 26 F.3d 1224, 1233–34 (2d Cir. 1994); *see also Mid-States Ins. Co. v. American Fid. & Cas. Co.*, 234 F.2d 721, 731 (9th Cir. 1956). The Court will therefore deny the motions to dismiss for failure to state a claim.

///

///

///

///

///

///

**CONCLUSION**

IT IS HEREBY ORDERED that the Motions to Dismiss (ECF Nos. 19, 30, 34) are DENIED.

IT IS FURTHER ORDERED that the Motion to Substitute Party (ECF No. 55) is GRANTED.

IT IS SO ORDERED.

Dated this 7th day of December, 2011.

_______________________________
ROBERT C. JONES
United States District Judge